# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JESSE L. ROUSEY, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) CASE NO. 04-CV-798-PJC |
| JO ANNE B. BARNHART, Commissioner, Social Security Administration, | ) ) ) ) ) |
| Defendant. | ) ) |

## ORDER

Claimant Jesse L. Rousey ("Rousey"), pursuant to 42 U.S.C. § 405(g), requests judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for disability benefits under the Social Security Act. In accordance with 28 U.S.C. § 636(c)(1), and (c)(3), the parties have consented to proceed before a United States Magistrate Judge and any appeal of this order will be directly to the Tenth Circuit Court of Appeals. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, the Court AFFIRMS the Commissioner's decision.

### Claimant's Background

Rousey was born on February 12, 1952; he was fifty-two years old at the time of the ALJ's decision. (R. 53, 216). Rousey possesses an eleventh-grade education. (R. 217). Prior to Claimant's disability claim, he performed very heavy, unskilled and semi-skilled work as a truck driver. (R. 251-52). He alleges an inability to work beginning June 11, 2002 due to degenerative disk disease, and pain and weakness in his upper extremities, knees, and lower back.

*Neck, Shoulder, and Back Pain*

By way of background, Rousey had a cervical fusion at the C5-6 level approximately fifteen years ago. (R. 173, 238). On November 5, 2001, he sought medical attention from Emil Milo, M.D., an orthopedic surgeon, for neck, shoulder, and back discomforts. (R. 152). Dr. Milo noted that an x-ray showed minimal to moderate degenerative arthritic changes, as well as degenerative disc disease at the L5-S1 level and recommended that a myelogram be performed. *Id*. On December 13, 2001, Rousey underwent a myelogram which found no intradural or intramedullary abnormalities, no evidence of herniated lumbar or lumbosacral discs, and no spinal stenosis. (R. 168). Based upon the finding, Dr. Milo opined that Rousey "should be treated conservatively for this problem." (R. 151).

On December 5, 2001, Rousey consulted John S. Marouk, D.O., a neurosurgeon, for similar complaints. (R. 174-75). Based upon an initial examination, Dr. Marouk concluded that Rousey suffered from a cervical radiculopathy at C7 and chronic low back pain and therefore scheduled Rousey for a MRI. (R. 174-77). On January 16, 2002, Rousey revisited Dr. Marouk to review the MRI. (R. 173). Based on the MRI which showed a "large disk herniation present at the C7-T1 level eskewed [sic] to the left side" and "[c]ervical spondylosis fairly severe at the C6-7 level," Dr. Marouk opined that Rousey would benefit from an anterior cervical fusion at the C6-7 and C7-T1 levels. *Id*. Dr. Marouk tried to schedule Rousey for surgery; however, no hospital would accept assignment from Vocational Rehabilitation, so Dr. Marouk released Rousey from his care. (R. 171).

On March 25, 2002, Rousey was examined by Fred Ruefer, M.D., a bone and joint specialist. (R. 199). Dr. Ruefer conducted a Spurling test which was negative and noted diffuse weakness in Rousey's left upper extremity as well as some weakness in the triceps and left grip. *Id*. Dr. Ruefer examined the MRI ordered by Dr. Marouk and opined that the radiological findings did not warrant surgical intervention. *Id*. A year later, Moses A. Owoso, M.D., performed a consultative examination of Rousey

2

and concluded that Rousey's range of motion for both his cervical spine/dorsolumbar spine and upper and lower extremities was within functional limits. (R. 186-88).

*Knee Pain*

On November 5, 2001, Rousey sought attention from Dr. Milo for complaints of pain in both knees, "especially over the medial joint lines." (R. 152). However, Dr. Milo noted that he walked with a very minimal limp and that he could climb upon the examination table without any difficulty. *Id.* He examined x-rays of Rousey's knees and stated that "both knees show narrowing of the medial joint lines bilaterally," and Rousey suffered from degenerative arthritis in his knees and possible medial menisci injuries. *Id.* Dr. Milo recommended anti-inflammatory medication and indicated that if the knee pain failed to subside, he would recommend arthroscopic surgery on both knees. (R. 152). On December 13, 2001, Rousey revisited Dr. Milo complaining of continuing pain and on January 24, 2002, Dr. Milo performed arthroscopic surgery on both knees.[1] (R. 151, 158-60). Shortly after the surgeries, Dr. Milo examined him and remarked that he was walking well, almost asymptomatic; he had no complaints; and neither knee was swollen. (R. 153). On July 26, 2002, Rousey was evaluated by Scott J. Dunitz, M.D., at the request of Vocational Rehabilitation, regarding Rousey's continued knee pain. (R. 200). Dr. Dunitz remarked that although Rousey had significant "quad atrophy bilaterally (but symmetric)," he walked without an antalgic limp, had normal overall alignment and full range of motion in his hips and knees. All ligaments were stable and there was no effusion. McMurray's test was negative, and the Stinchfield test was unremarkable. *Id*. Moreover, x-rays failed to show any evidence of degenerative disease or anatomic malalignment. *Id.* Dr. Dunitz concluded surgery was unnecessary and recommended strengthening

---

[1] Several years prior to visiting Dr. Milo, Rousey had arthroscopic surgery performed on his left knee.

3

exercises. *Id*.

On March 25, 2003, consulting physician Dr. Owoso examined Rousey and noted no instability in either knee and no demonstrable effusion. (R. 186-91). Additionally, Rousey's gait was balanced and stable without any assistive device; his gait speed was normal and safe; he got on and off the exam table independently; his coordination was good; his static and dynamic balance were good; he sat well, went from the sitting to standing position normally and possessed full range of motion in both knees. (R. 188-89).

## Procedural History

On January 6, 2003, Rousey filed a claim seeking disability insurance benefits in accordance with Title II, 42 U.S.C. § 401 *et seq.*, which was denied both initially and upon reconsideration.[2] A hearing before ALJ James D. Jordan took place on April 12, 2004. (R. 213). The ALJ issued a decision, dated May 6, 2004, finding Rousey not disabled through the date of the decision. (R. 16-22). The Appeals Council denied review on August 19, 2004. (R. 6). Consequently, the ALJ's decision is the final decision of the Social Security Commission for purposes of appeal. 20 C.F.R. § 404.981.

## Social Security Law and the Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists

---

[2] Rousey filed a prior application for disability benefits on February 4, 2002 which was denied initially and not pursued.

4

in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. § 404.1520.[3] Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hargis v. Sullivan*, 945 F.2d 1482, 1486 (10th Cir. 1991) (citations omitted). The Court may not reweigh the evidence nor substitute its discretion for that of the agency. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991) (citations omitted).

## Decision of the Administrative Law Judge

The ALJ made his determination at Step Five of the sequential process. He found that Rousey had not engaged in substantial gainful activity since the alleged onset date. (R. 17). The ALJ found that Rousey's post-bilateral arthroscopic knee surgery and degenerative disk disease were "severe" impairments, but did not meet or equal any of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. *Id*. The ALJ concluded that Rousey possessed the RFC to perform light work activity - lifting ten

---

[3] Step One requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. § 404.1510. 20 C.F.R. § 404.1520(a)(4)(i). Step Two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. *See* 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant is engaged in substantial gainful activity, Step One, or if the claimant's impairment is not medically severe, Step Two, disability benefits are denied. At Step Three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App.1. A claimant suffering from a listed impairment, or impairments "medically equivalent" to a listed impairment, is determined to be disabled without further inquiry. If not, the evaluation proceeds to Step Four, where the claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant's Step Four burden is met, the burden shifts to the Commissioner to establish at Step Five that work exists in significant numbers in the national economy which the claimant, taking into account his age, education, work experience, and RFC, can perform. *See Dikeman v. Halter*, 245 F.3d 1182, 1184 (10th Cir. 2001). Disability benefits are denied if the Commissioner shows that the impairment, which precluded the performance of past relevant work, does not preclude alternative work. 20 C.F.R. § 404.1520(a)(4)(v).

pounds frequently and twenty pounds four times an hour; sitting, standing, and walking up to six hours each in an eight-hour day with no bending to the floor, kneeling, squatting, or climbing. (R. 21). Based on these restrictions, the ALJ held that Rousey could not perform his past relevant work as a truck driver, but that there were a significant number of jobs in the national economy he could still perform, such as bench assembler and electronic assembler. (R. 20-21). Consequently, he concluded that Claimant was not disabled at any time through the date of the decision. (R. 22).

## Review

Rousey asserts as error that (1) the ALJ failed to properly weigh the opinion and findings of Dr. Marouk and (2) the RFC found by the ALJ is not supported by substantial evidence. The Court concludes that the ALJ applied the correct legal standards and the RFC is supported by substantial evidence.

Rousey contends that the ALJ did not properly weigh Dr. Marouk's opinion as that of a treating physician. A treating physician may offer an opinion that reflects a judgment about the nature and severity of the claimant's impairments, including the claimant's symptoms, diagnosis and prognosis, what the claimant can do despite his or her impairment, and any physical or mental restrictions. 20 C.F.R. § 404.1527(a)(2). A treating physician's opinion must be given substantial weight unless good cause is shown to disregard it. *Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir. 1987) (citing *Turner v. Heckler*, 754 F.2d 326, 329 (10th Cir. 1985)). "When a treating physician's opinion is inconsistent with other medical evidence," it is the job of the ALJ "to examine the other physician's reports to see if they outweigh the treating physician's report, not the other way around." *Goatcher v. U.S. Dep't of Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir. 1995) (citing *Reyes v. Bowen*, 845 F.2d 242, 245 (10th Cir. 1988)).

The Court finds that the ALJ considered Dr. Marouk's recommendation that Rousey should undergo neck surgery and appropriately discounted the opinion based on inconsistent medical evidence in the record, specifically the opinions of the other treating and examining physicians. The ALJ found that

"subsequent records reflect that the claimant has functional range of motion in the cervical spine, and no other physicians have recommended neck surgery." (R. 19). Dr. Marouk concluded, based on a MRI, that Rousey would benefit from an anterior cervical fusion at the C6-7 and C7-T1 levels. (R. 171). However, during the same time period, Dr. Milo stated that he did not recommend surgery based on Rousey's negative myelogram. (R. 151). It is important to note that Dr. Milo is also a treating physician. Moreover, Dr. Dunitz found that Rousey's spine had good range of motion with equal reflexes. (R. 200). Dr. Ruefer performed a physical exam of Rousey's spine and noted that although there was "marked limited range of motion in all planes of the cervical spine secondary to stiffness," based on Rousey's MRI scan he did not recommend surgical intervention. (R. 199). Further, Dr. Owoso's examination found Rousey's spine alignment normal, no localized tenderness or muscle spasms, and his cervical spine/dorsolumbar spine within functional limits. (R. 188). The other treating and examining physicians did not agree with Dr. Marouk's recommendation for surgery, consequently the ALJ did not err in not giving controlling weight to Dr. Marouk's recommendation for surgery. Where, as here, it is clear that the ALJ considered the opinion of a treating physician and provided sufficient legitimate reasons for not giving the treating physician's opinion as much weight as other treating and examining physicians' opinions, the decision is in accordance with the medical opinion evaluation factors set forth in 20 C.F.R. § 404.1527(d). Accordingly, the Court finds no error in the ALJ's consideration of Dr. Marouk's opinion regarding surgery.

The Court also finds no error in the ALJ's RFC determination. A RFC assessment is a determination of what work activities a claimant can still perform despite his "severe" impairment(s). 20 C.F.R. § 404.1545(a)(1). In assessing the claimant's physical RFC, the ALJ must look to the claimant's capability for "the physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as

reaching, handling, stooping or crouching ." 20 C.F.R. § 404.1545(b). In evaluating the claimant's RFC, the ALJ must always consider "all of the relevant medical and other evidence." 20 C.F.R. § 404.1545 (a)(3).

Claimant argues the substantial evidence does not support the ALJ's finding that Rousey had the RFC to perform light work activity. In support, he cites Dr. Milo's November 2001 diagnosis of degenerative disc disease at L5-S1 and lumbar radiculopathy on the left side (R. 152), the MRI demonstrating a left lateral disc herniation at C7-T1 and spondylosis with bilateral neural foraminal narrowing at C6-7 (R. 176), Dr. Dunitz's observation of muscle atrophy in both quadriceps (R. 200), and Dr. Owoso's March 2003 finding of right hip and lower back pain secondary to arthritis (R. 188). However, Rousey's lumbar myelogram showed no intradural or intramedullary abnormalities, no extradural deformities or evidence of herniated lumbar or lumbosacral discs and no suggestion of spinal stenosis, and Dr. Milo later opined based on Rousey's negative lumbar myelogram that Rousey should be "treated conservatively" for his lower back problem. (R. 151, 168). Further, although Dr. Dunitz remarked that Rousey had significant "quad atrophy bilaterally (but symmetric)," he observed that Rousey walked without an antalgic limp, had normal overall alignment and full range of motion in his hips and knees. All ligaments were stable, there was no effusion, and the x-rays failed to show any evidence of degenerative disease or anatomic malalignment of the knees. (R. 200). Based on this, Dr. Dunitz concluded that surgery was unnecessary and Rousey should pursue strengthening exercises. *Id*. Finally, Dr. Owoso determined that although Rousey complained of arthritic low back and right hip pain, Rousey's range of motion in his dorsolumbar spine and lower extremities was within functional limits and there was no localized tenderness or muscle spasm in his back. (R. 188).

In addition, the Court notes that none of Rousey's treating or consulting physicians suggested he was functionally incapable of performing any type of work-related activity. Further, although Rousey

continued to complain of pain in both knees, post-surgery physical examinations revealed that he had functional range of motion in both knees and the ALJ appropriately limited Rousey to work activities which involved no bending, kneeling, squatting or climbing. (R. 19). Finally, the ALJ's evaluation of Rousey's RFC is more limited than that assessed by the medical expert at the hearing, Dr. Susan Blue. Dr. Blue testified that Rousey could still lift twenty pounds frequently, forty pounds occasionally, reach overhead occasionally, and perform limited pushing and pulling of those same weights. (R. 249). She also did not feel there was evidence supporting a limitation of sitting, standing, or walking and opined that degenerative disk disease is a fairly common finding in a patient Rousey's age. (R. 250).

Rousey also complains that the ALJ did not incorporate Dr. Blue's limitation of "occasional" overhead reaching in his RFC; therefore, the RFC is not supported by substantial evidence. Claimant argues this omission is particularly important as both of the jobs the ALJ identified as available to Rousey given his RFC, *i.e.*, bench assembler and electronic assembler, require frequent reaching. The Court finds no error. First, the ALJ is not bound by the medical expert's opinion. 20 C.F.R. § 404.1546(c) ("[T]he administrative law judge . . . is responsible for assessing [a] residual functional capacity.") . Additionally, there is nothing in the *Dictionary of Occupational Titles* description of jobs at §§ 780.684-062 and 729.687-010 that Claimant presents which states that either job requires "overhead" reaching. *Exhibits to Plaintiff's Opening Brief* (Dkt. #22).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *White v. Barnhart*, 287 F.3d 903, 905 (10th Cir. 2002) (citation omitted). Based on the above, the Court concludes that the ALJ's finding that Rousey had the RFC to perform light work is supported by substantial evidence.

For the reasons stated, the Court concludes that the decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. The decision is, therefore, AFFIRMED.

DATED this 9th day of February, 2006.

_____
Paul J. Cleary
United States Magistrate Judge